UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

COREY FORD,

                                        Plaintiff,

            v.                                                      9:09-CV-723
                                                                    (DNH/ATB)
BRIAN FISCHER, et al.,

                                        Defendants.

_____

COREY FORD, Plaintiff *pro se*
BRIAN J. O'DONNELL, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

            This matter was referred to me for Report and Recommendation on March 8,

2010 by U.S. District Judge David N. Hurd, pursuant to 28 U.S.C. § 636 (b) and Local

Rules N.D.N.Y. 72.3(c).  Plaintiff's second amended complaint ("AC," Dkt. No. 28)

seeks monetary damages, under 42 U.S.C. § 1983, for various alleged violations of his

constitutional rights arising from his confinement by the New York State Department

of Correctional Services ("DOCS") at the Shawangunk Correctional Facility

("Shawangunk") in 2008 and 2009.  Presently before this court is defendants' motion

to dismiss the second amended complaint for failure to state a claim, pursuant to FED.

R. CIV. P. 12(b)(6), which was supported by several substantive affidavits and

substantial documentary evidence.  (Dkt. No. 32).  Plaintiff has filed a lengthy

declaration and voluminous documentary exhibits in opposition to the defendants'

motion.  (Dkt. No. 35).  For the reasons set forth below, this court recommends

granting in part and denying in part defendants' motion.

## DISCUSSION

### I.    Facts

On or about April 14, 2004, plaintiff was transferred to the Special Housing Unit ("SHU") at Shawangunk, following his violent assault on a correction officer at Green Haven Correctional Facility ("Green Haven").[1]  Plaintiff alleges, and defendants admit, that plaintiff was the subject of a "mail watch" at Shawangunk, from the time of his transfer in April 2004, through at least late 2009.  (AC, Facts ¶ 9; Defts.' Memo. of Law at 6, Dkt. No. 32-24).  Plaintiff claims that the screening of his incoming and outgoing mail at Shawangunk included some privileged legal mail, and resulted in delays of many days in delivery of his mail.  (AC ¶¶ 11-15, 22).  Shawangunk Superintendent Joseph T. Smith admittedly approved the initial mail watch, and renewed the approval every 60 days thereafter.  (AC, Facts ¶ 9; Defts.' Memo. of Law at 6).  Plaintiff alleges that John Maly, Deputy Superintendent for Security, and Ms. Parisi, a mail clerk, were involved in executing the mail watch.  (AC ¶¶ 11-15, 22-23).

On or about March 22, 2009, plaintiff was charged in an Inmate Misbehavior

---

[1] Plaintiff threw hot oil in the face of the correction officer at Green Haven and then stabbed him three times. *Ford v. Smith*, 23 A.D.3d 874, 875, 803 N.Y.S. 2d 821 (3d Dept. 2005), *lv. app. den.*, 6 N.Y. 708, 813 N.Y.S. 2d 44 (N.Y. 2006).  Plaintiff was found guilty of various disciplinary charges at Green Haven and sentenced to serve eight years in the SHU, which disposition was upheld in an Article 78 proceeding and affirmed on appeal.  *Id.*  Plaintiff was also convicted on related criminal charges in Dutchess County, New York, for which he was sentenced, on June 11, 2008, to a consecutive prison term of 22 years to life.  (AC ¶ 27; 6/11/08 Transcript of Sentencing at 1, 13-14, Dkt. No. 35-2 at 7, 19-20).

Report based on two of his letters which were reviewed and confiscated by defendant Maly pursuant to the continuing mail watch.  In one letter, plaintiff allegedly asks an unincarcerated individual to harass and threaten plaintiff's "fiancee."  In the other letter, which plaintiff sent to another inmate through a person outside the facility (a prohibited process known as "kiting"), plaintiff allegedly asks one inmate to assault another inmate.  (AC ¶ 25).  Plaintiff claims that, in connection with the disciplinary hearing conducted by defendant Eric Gutwein, he was deprived of proper assistance, in that he was denied documents he deemed critical to his defense.  Plaintiff also claims that Hearing Officer Gutwein improperly refused to allow certain witnesses, requested by plaintiff, to testify.  Plaintiff was found guilty of the disciplinary charges and sentenced to an additional 18 months in the SHU and 18 months loss of good time.  (AC ¶ 29).[2]

Plaintiff requested permission to marry his fiancee on or about April 1, 2008, while he was still confined in the SHU at Shawangunk.  Defendant Smith refused plaintiff's request based on his long-term SHU status.  (AC ¶¶ 16-18; 4/24/08 Smith Ltr., Dkt. No. 35-3 at 58).  In April 2009, Supt. Smith indefinitely revoked the visiting privileges of plaintiff's fiancee because of her alleged involvement in smuggling a note from another inmate to plaintiff in the visiting room, and because of purported

---

[2] The disciplinary proceeding resulted in sanctions affecting both the conditions and duration of plaintiff's confinement.  In order to be allowed to proceed with this Section 1983 action seeking money damages for alleged constitutional violations in connection with the disciplinary hearing, without first pursuing a habeas action to attack the sanctions affecting the term of imprisonment, plaintiff states that he forever abandoned any claim of challenging the loss of good time.  (AC at p. 36, citing *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006), *cert. denied sub nom. Jones v. Peralta*, 551 U.S. 1145 (2007)).

concerns for her safety based on the intercepted letter in which plaintiff allegedly asked another individual to harass and threaten her.  (AC ¶¶ 24, 30-32, 34).    Plaintiff claims that Supt. Smith and Dep. Supt. Maly pursued "an anti-family agenda against plaintiff, all in retaliation" for plaintiff's assault of a correction officer at Green Haven in April 2004, and his filing of grievances and lawsuits against certain defendants. (AC ¶¶ 17, 33-34).  Plaintiff alleges that he formally appealed the revocation of his fiancee's visitation rights to defendant Brian Fischer, the DOCS Commissioner, but did not receive any reply.  (AC ¶ 35).

Plaintiff alleges that his cell was searched three times in one week in July 2009, purportedly in retaliation for his initiation of this lawsuit and his filing of grievances and other court actions.  Plaintiff claims that several correction officers informed him that "higher ups," including defendants Smith and Maly, had ordered them to destroy plaintiff's cell and take his legal magazines and books.  (AC ¶¶ 36-39).

## II.    Contentions and Summary of Recommendations

Plaintiff purports to sue DOCS Commissioner Fischer, Shawangunk Supt. Smith, Dep. Supt. Maly, Mail Clerk Parisi, and Hearing Officer Gutwein in their individual and official capacities.[3]  The second amended complaint states five causes

---

[3] It is now well-settled that the state itself cannot be sued under section 1983.  *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (*citing Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87-88 & n.1 (2d Cir. 1991) (citations omitted).  To the extent that the DOCS defendants are being sued in their official capacity for money damages, that cause of action should be dismissed under the Eleventh Amendment.  *Huang v. Johnson*, 251 F.3d 65, 69-70 (2d Cir. 2001); *Posr v. Court Officer Shield #207*, 180 F.3d 409, 414 (2d Cir. 1999).

of action based on particular constitutional rights that plaintiff alleges were violated in various ways. However, it will be easier to address plaintiff's claims if they are considered by reference to the nature of the defendants' alleged underlying conduct.

Plaintiff alleges that the repeated extensions of the "mail watch" directed at him were not supported by current information establishing reasonable cause, and were motivated by a desire to retaliate against him for pursuing protected activity. Plaintiff claims that the mail watch violated applicable DOCS Directives, his due process rights, and his First Amendment rights–by interfering with the "free flow" of his incoming and outgoing mail, and by improperly denying him access to courts. Relying on affidavits that go beyond the allegations in the complaint or the documents reasonably associated with it, defendants argue that there was sufficient cause for the ongoing mail watch to pass constitutional muster. However, on the basis of the information properly considered in the context of a motion to dismiss, this court finds that plaintiff has stated a plausible claim that, by continuing the mail watch through all of 2008 and 2009, defendants Smith and Maly violated plaintiff's First Amendment rights. Plaintiff's claim that the mail watch denied him access to the courts should be dismissed because he fails to make plausible allegations that he was prejudiced in connection with any litigation.

The second amended complaint suggests that the disciplinary charges against plaintiff violated his constitutional rights because they were predicated on his letters, which were improperly reviewed and confiscated pursuant to the ongoing mail watch. However, because inmates are not constitutionally entitled to the suppression of

illegally obtained evidence in the context of a disciplinary hearing, this cause of action would fail even if the ongoing mail watch were ultimately determined to violate the First Amendment. Plaintiff also alleges that he was deprived of due process at his disciplinary hearing because he was denied certain documents and because the hearing officer refused to call two witnesses, without adequate supporting reasons. Plaintiff's motion papers attach extensive documentary evidence, including the hearing transcript, in which defendant Gutwein articulates rational reasons for not allowing the particular documents and witnesses. In any event, none of the excluded evidence would have effected the outcome of the hearing, and so any procedural errors were harmless. Based on plaintiff's allegations and submissions, without reference to the hearing officer's affidavit, the plaintiff's due process claims relating to the disciplinary hearing should be dismissed under Rule 12(b)(6).

Plaintiff claims that defendant Smith denied his request to marry, based on retaliatory motives and without reasonable penological justification, in violation of plaintiff's First and Eighth Amendment rights. Relying on affidavits beyond the proper scope of a motion to dismiss, the defendants attempt to document and defend Supt. Smith's reasons for denying plaintiff's request. This court concludes that, based on the information properly considered under Rule 12, plaintiff establishes a plausible claim that, in preventing plaintiff from marrying, perhaps for the entire duration of his long-term SHU confinement, defendant Smith violated plaintiff's First Amendment rights.

Plaintiff asserts that the revocation of his fiancee's visitation rights were

6

retaliatory and a violation of his due process, and Eighth Amendment rights.  This court concludes that plaintiff's conclusory allegations of retaliation fail to state a viable claim.  The denial of visitation cannot be the basis of an Eighth Amendment or due process claim by a inmate.  Plaintiff's complaint will be liberally construed to also include a claim under the First Amendment; however, the admitted reasons stated for the denial of visitation clearly constitute a rational penological justification.  Because DOCS Commissioner Fisher's alleged role in the violations alleged in the second amended complaint seems to be limited to his failure to respond to plaintiff's appeals or complaints involving visitation and, perhaps, other issues, he was not personally involved to the extent necessary to establish his liability under Section 1983.

Finally, plaintiff alleges that the cell searches in July 2009 were in retaliation for his involvement in grievances and law suits against DOCS officials.  However, even if plaintiff's sparse allegations suggested a retaliatory motive, cell searches in the prison setting are not the type of "adverse action" that will support a civil rights claim.[4]

### III.   <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its

---

[4] The "fourth cause of action" in the second amended complaint, which purports to state claims under the Eighth Amendment, makes a passing reference to conditions of confinement at Shawangunk.  (AC at p. 27).  The vague allegations about un-shoveled snow and bird droppings in the exercise areas, occasional discoloration in the water, and late Ramadan meals are insufficient to state a plausible claim that the defendants were personally responsible for, or deliberately indifferent to, conditions of confinement that imposed an excessive risk to the plaintiff's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat *pro se* pleadings with liberality.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).  No exhibits are attached to the second amended complaint, although it does reference a number of specific documents.  The defendants have

submitted three affidavits and a number of documents that go beyond what should properly be considered in connection with their motion to dismiss.  *See, e.g., Sira v. Morton*, 380 F.3d 57, 67-68 (2d Cir. 2004) (because the district court did not exclude, from its consideration, a document not incorporated by reference in or integral to the complaint, the district court should have converted the motion to dismiss into one for summary judgment).

The plaintiff responded in kind to the defendants' motion and its supporting affidavits and exhibits, filing a 78-page declaration and a substantial number of supporting documents.  At least to the extent the additional factual information submitted by plaintiff is consistent with the allegations in the complaint, it may be considered in connection with the motion to dismiss, as a *de facto* amendment of the complaint.  See, e.g., *Benitez v. Ham*, 9:04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *8 & n.21 (N.D.N.Y. Oct. 21, 2009) (citing, *inter alia*, *Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss).  There is some authority for the proposition that, when "it is clear from the record" that the party responding to a motion to dismiss knew that additional factual submissions "were being considered and, in fact, responded with its own evidentiary submissions," a court may consider factual allegations outside the complaint in deciding the motion.  *See, e.g., Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 57 (2d Cir. 2007) (under those circumstances, it was harmless error for the court to fail to give explicit notice that it was converting the Rule 12 motion to a Rule 56 motion).  However, because this *pro*

9

*se* plaintiff has not been given any notice that the defendants' motion to dismiss would or could be converted to one for summary judgment, this court finds it inappropriate to consider defendants' factual affidavits and most of the supporting documents against the *pro se* plaintiff in resolving the current motion.[5]  Plaintiff has asserted two facially plausible claims that are better resolved by a properly noticed and documented motion for summary judgment.

## IV.   Mail Watch and Related Conduct

### A.   Mail Watch

#### 1.   Legal Standards

Among the protections enjoyed by prison inmates, subject to appropriate limitations, is the right "to the free flow of incoming and outgoing mail" guaranteed by the First Amendment.  *LeBron v. Swaitek*, No. 05-CV-172 (GLS/DRH), 2007 WL 3254373, at *6 (N.D.N.Y. 2007) (Sharpe, J.) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).[6]  That right, however, must yield to the legitimate penological interests of prison officials when mail is monitored for the purpose of ensuring order in the prison by preventing illegal activities, in which case no constitutional violation has occurred. *Duamutef v. Hollins*, 297 F.3d 108, 112-13 (2d Cir. 2002) (citing, *inter alia*, *U.S. v. Workman*, 80 F.3d 688, 699 (2d Cir.1996)).  "The [Supreme] Court has

---

[5] The court will not consider,  against the plaintiff, the affidavits of defendants Smith (Dkt. No. 32-1), Maly (Dkt. No. 32-7), and Gutwein (Dkt. No. 32-16) or, except to the extent discussed below, the supporting documents.

[6] This discussion of the applicable legal standards draws heavily on Magistrate Judge Peebles' report-recommendation in *Dillhunt v. Theriault*, 9:07-CV-0412 (GTS/DEP), 2009 WL 4985477, at *9 (N.D.N.Y. Dec. 15, 2009), which was adopted by District Judge Suddaby.

counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' " *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir.1995) (quoting *Turner v. Safely*, 482 U.S. 78, 84 (1987)).

Actions taken by prison administrators directed toward inmate mail are subject to the overarching consideration that a prison regulation infringing on an inmate's constitutional rights is valid so long as the regulation is "reasonably related to the legitimate penological interests." *Turner v. Safely*, 482 U.S. at 89.  Applying this precept, "[c]ourts have constitutionally afforded greater protection . . . to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351 (citations omitted).  Nonetheless, the Second Circuit has held that "'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman*, 80 F.3d at 698 (quoting *Wolfish v. Levi*, 573 F.2d 118, 130 n. 27 (2d Cir.1978), *rev'd in part on other grounds sub nom.*, *Bell v. Wolfish*, 441 U.S. 520 (1979)).

### 2.    Application

Although the second amended complaint alleges that the mail watch relating to plaintiff was unlawful from its inception in April 2004 (AC, Facts ¶ 9), this lawsuit focuses on the claim that the mail watch was continued through 2008 and 2009, without any new or current factual information to establish good cause or penological justification.  (AC ¶¶ 40, 52-53).  Plaintiff would likely be foreclosed from challenging the validity of the initial mail watch based on his prior litigation of this issue.  In *Ford v. Phillips*, et al., 05 Civ. 6646, 2007 WL 946703, at *14-15 (S.D.N.Y.

Mar. 27, 2007), a district judge in the Southern District of New York rejected this plaintiff's prior civil rights challenge to the mail watch at Shawangunk, for the period from April 2004 through the date of filing of the complaint in that action in 2005.  The judge concluded that DOCS officials had ample good cause to monitor plaintiff's mail, including the need (1) to investigate his April 2004 assault on a correction officer at Green Haven, (2) to prevent Ford from instigating further violence following the assault, and (3) to monitor efforts by Ford to improperly influence witnesses in connection with his impending criminal trial.  *Id.* at *14.[7]  If plaintiff were attempting to relitigate the legality of the initial mail watch in this action, he would be barred by claim preclusion.  *Ford v. Krusen*, 9:06-CV-890 (GTS/DEP), 2009 WL 959534, at *7 (Apr. 6, 2009) (Corey Ford's prior, unsuccessful, due process challenge to the disciplinary hearing leading to his prolonged SHU confinement in the Southern District of New York barred him from pursuing that claim further in a subsequent

---

[7] The district judge in the Southern District noted that, during the mail watch, DOCS officials found, in or before 2006, at least one letter that was relevant to the prison's investigation of the assault, and one letter through which Ford attempted to influence a witness in his trial.  *Id.* The second amended complaint points out that the state court judge who presided over plaintiff's criminal trial for the April 2004 assault, suppressed a letter seized pursuant to the mail watch in late 2004.  (AC ¶ 10).  Transcripts of the state court proceedings submitted by plaintiff in opposition to defendants' motion, makes clear that the state court judge found that repeated 60-day renewals of the mail watch, without any factual statements of justification, violated "due process" because DOCS did not follow its own rules and regulations, in DOCS Directive 4422. (Dkt. No. 35-2 at 1-4; AC ¶ 10).  It is not clear whether the state judge purported to apply New York state or federal due process standards.  However, as discussed below, a violation of DOCS directives in connection with the mail watch would not constitute a federal constitutional violation cognizable under Section 1983.  Hence, the state judge's suppression ruling would not undermine the preclusive effect of the federal judge's adverse ruling in the Southern District of New York on plaintiff's federal constitutional claim relating to the mail watch during the period from April 2004 through the date plaintiff filed the prior action in 2005.

action in the Northern District of New York).

Plaintiff focuses on the fact that the continuation of the mail watch for approximately five years, violated the internal guidelines of DOCS Directive 4422.[8] However, a violation of this DOCS Directive does not state a claim for a constitutional

---

[8]Mail watches are governed by DOCS Directive # 4422, which provides, in relevant part, as follows:

**III.B.[9.]** Outgoing correspondence [. . .] shall not be opened, inspected, or read without express written authorization from the facility Superintendent.

a. The Superintendent shall not authorize the opening or inspection of such outgoing mail unless there is a reason to believe that the provisions of this or any directive or inmate rule or regulation have been violated, that any applicable state or federal law has been violated, or that such mail threatens the safety, security, or good order of a facility or the safety or well being of any person. Such written authorization by the Superintendent shall set forth specific facts forming the basis for the action.

b. If after inspecting the contents of outgoing mail it is determined that the provisions of a directive, rule or regulation, or state or federal law have been violated, or that such correspondence threatens the safety, security or good order of the facility or the safety or well being of any person, then the correspondence may be confiscated. The inmate must be informed in writing unless doing so would interfere with an ongoing investigation.

Where the inmate has been so notified, he or she may appeal the action to the Superintendent. * * *

**III.G.5.** Incoming general correspondence, other than inmate-to-inmate letters and inmate business mail, will not be read unless there is evidence that the correspondence may contain one or more of the following:

a. Plans for sending contraband in or out of the facility;

b. Plans for criminal activity including escape; and

c. Information which, if communicated, would create a clear and present danger to the safety of persons and/or the security and good order of the facility.

**III.G.6.** Written authorization from the facility Superintendent to read incoming mail must be placed in the inmate's file specifying the reasons such action is considered necessary and whether all mail or certain correspondence shall be read. Such authorization shall be for a 60 day period subject to renewal by the Superintendent. The Superintendent shall request documentation from the person recommending inspection to determine that there are sufficient grounds for reading the mail, that the reasons for reading the mail are related to the legitimate interests of safety, security, and order, and that the reading is no more extensive than necessary to further these interests.

*Jackson v. Portuondo*, 9:01-CV-00379 (GLS/DEP), 2007 WL 607342, at *5 n.7 (N.D.N.Y. Feb. 20, 2007).

violation under Section 1983.  *See, e.g., Dillhunt v. Theriault*, 2009 WL 4985477, at

*11 (collecting cases).

Liberally construing the second amended complaint, plaintiff also alleges that

his constitutional rights were violated because successive 60-day renewals of the mail

watch were "rubber stamp[ed]" by Supt. Smith through 2008 and 2009 without any

"new underlying facts" establishing good cause to continue the mail watch.  (AC ¶¶

40, 52-53).  The allegations of the complaint and the related documents which are

arguably incorporated by reference in the complaint, or were submitted by plaintiff in

his motion papers, identify two abuses of the prison mail system by plaintiff in March

2009 that would certainly appear to justify a mail watch for some period of time

thereafter.[9]  DOCS reviewed and confiscated two sets of letters from plaintiff at that

time–one which allegedly reflected an effort by plaintiff to harass or threaten his

fiancee through others outside the institution over some disputed money, and another,

which was improperly "kited" through someone outside the facility, and which

purportedly sought to induce one inmate to threaten or do harm to another inmate at

plaintiff's behest.  (AC ¶ 25).[10]

---

[9] See, e.g., *Jackson v. Portuondo*, 2007 WL 607342, at *6 -7, 13 (granting summary judgment on claim challenging mail watch, which was supported by evidence that inmate was "kiting" mail in an effort to harm another inmate and smuggle contraband) (citing, *inter alia*, *United States v. Felipe*, 148 F.3d 101, 107-108 (2d Cir. 1998) (knowledge that plaintiff had violated prison regulations related to mail, and had written about the commission of illegal acts constituted reasonable cause to intercept the inmate's correspondence).

[10] While not validating the DOCS interpretations of this correspondence, plaintiff refers to it with some specificity in the second amended complaint.  (AC ¶ 25).  Thus, the copies of the letters attached to defendant Maly's affidavit (Dkt. No. 32-11 & 32-12) are properly considered here.  *Sira v. Morton*, 380 F.3d at 67 (where the complaint explicitly refers to and relies upon

The affidavits of defendants Smith and Maly, which this court is **not** using against the plaintiff in connection with this motion to dismiss, provide no factual information relating to any misconduct of plaintiff that would provide current justification for the mail watch after 2005 or 2006 (as described in the prior case from the Southern District of New York, *Ford v. Phillips*, 2007 WL 946703, at *14-15), but before March 2009, when plaintiff was accused of several instances of mail-related misconduct.  (Smith Aff., Dkt. No. 32-1; Maly Aff., Dkt. No. 32-7).[11]  Moreover, the 33 memoranda by which Supt. Smith repeatedly renewed plaintiff's mail watch between June 2004 and August 2009 (Dkt. No. 32-2 at 6-38) do not set forth any justification for continuing the mail watch.  The Second Circuit has suggested that, although prison officials are entitled to considerable deference in ordering a mail watch for security reasons, justification for a mail watch should be relatively current, and the duration of the screening of mail should be reasonably limited based on the perceived threat.  *Duamutef v. Hollins*, 297 F.3d at 113 (mail-related disciplinary charge in 1994, following a history of involvement in prohibited organizational

---

documents, they are properly considered in the context of a Rule 12(b)(6) motion).  In any event, plaintiff attaches, to his motion papers, the transcript from his March 2009 disciplinary hearing where the letters are discussed in detail and, often at the behest of plaintiff, read into the record. (*See, e.g.*, Dkt. No. 35-4 at 14, 20, 39, 40).  Notwithstanding plaintiff's dispute about the import of these letters, the text clearly implicated the safety and security concerns of the facility.  Hence, the confiscation of this particular mail would clearly be supported by good cause and would not support a Section 1983 claim.  *See Ford v. Phillips*, 2007 WL 946703, at *14 (confiscation of letters admitting to assault and attempting to properly influence witnesses "did not go beyond what was necessary to protect the prison's legitimate penological interests").

[11] The Smith affidavit ( ¶ 7) and the Maly affidavit ( ¶ 9) vaguely suggest that plaintiff engaged in some other instances of mail kiting, but provide no dates or other specific information.

activities, was not too remote to justify a "temporary" (30-day) watch on plaintiff's mail in 1995).  Given that the legitimacy of the penological justification for a mail watch is difficult to validate, in the context of a Rule 12(b)(6) motion,[12] this court finds, that plaintiff's First Amendment cause of action against defendants Smith and Malay should not be dismissed at this stage of the proceedings.

## 2.    Personal Involvement of Defendant Parisi

Mail Clerk Doreen Parisi was clearly involved in the implementation of the mail watch authorized by Supt. Smith.  (AC ¶ 55).  However, she lacked the authority to decline the directions of Supt. Smith and Dep. Supt. Maly to intercept plaintiff's mail and provide it defendant Maly for his review.  Unlike defendants Smith and Maly, Ms. Parisi had no personal involvement in the acts which allegedly violated plaintiff's constitutional rights–the authorization of the mail watch without adequate and current penological justification.  Under these circumstances, defendant Parisi should not be liable, under Section 1983, for her clerical role in carrying out the mail watch at the direction of her superiors.  See, e.g., *Webster v. Fischer*, 694 F. Supp. 2d 163, 181 (N.D.N.Y. Mar. 9, 2010) (dismissing claim of senior mail clerk that she initiated and

---

[12] *See, e.g., Knight v. Keane*, 247 F. Supp. 2d 379, 384-85 (S.D.N.Y. 2002) (in the context of a Rule 12(b)(6) motion, the record is insufficient to establish that inspection of plaintiff's mail was based on good cause, distinguishing *Duamutef*, 297 F.3d 108 (upon an application for summary judgment, finding that "a rational jury" could not find that the watch on plaintiff's mail was not reasonably related to legitimate penological interests); *LeBron v. Swaitek*, 2007 WL 3254373, at *7 (it may be the case that the confiscation of LeBron's outgoing mail was justified by legitimate governmental interests; however, it would be inappropriate to dismiss LeBron's claim at this time under Rule 12(b)(6) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986) (reversing the district court's dismissal of claims relating to interference with plaintiff's outgoing and incoming mail under Rule 12(b)(6)).

participated in a mail watch, which only the Superintendent of the facility had the authority to institute); *Davidson v. Goord*, 99-CV-555S , 2000 WL 33174399, at *9 (W.D.N.Y. Sept. 27, 2000) (plaintiff's allegations regarding delays in legal mail were not sufficient to state a constitutional claims against DOCS personnel who merely handled inmate mail consistently with applicable DOCS policies).  *See also Smith v. Woods*, 9:05-CV-1439 (LEK/DEP), 2008 WL 788573 at *9 (N.D.N.Y. Mar. 20, 2008) (dismissing medical indifference claim against social worker and psychologist in prison who had no authority to override the decision of the treating psychiatrist). Thus, the amended complaint may be dismissed in its entirety as to defendant Parisi.

### B.    Access to Courts

Plaintiff has also alleged that the mail watch resulted in delays of his legal correspondence.  The First and Fourteenth Amendments to the U.S. Constitution are implicated when a prisoner's legal mail is obstructed, but a plaintiff must allege that the defendants' actions hindered the prisoner's "efforts to pursue a legal claim."  *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d. Cir. 1997).  In order to establish a claim that a prisoner's right of access to the courts has been abrogated, actual injury must be shown.  *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).  In this case, plaintiff has not alleged that any delays in his mail resulted in prejudice to him in any legal proceeding, and thus he fails to state a claim for denial of access to courts.  *See, e.g, Zimmerman v. Seyfert*, 9:03-CV-1389 (TJM), 2007 WL 2080517, at *31 (N.D.N.Y. July 19, 2007) (plaintiff's First Amendment claim of denial of access to courts based upon the mail watch must

17

be dismissed because he cites no case that was hindered or lost because of the mail watch); *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y.1995) (a mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation).[13]  Thus, this court recommends that plaintiff's access-to-courts claim be dismissed as to all defendants.

## C.   Retaliation and Due Process

The second amended complaint suggests that the mail watch was instituted in retaliation for plaintiff's participation in protected activity and violated his due process rights.  Conclusory allegations of retaliation, like those in plaintiff's complaint, are insufficient to support a viable claim of retaliation.  *See, e.g., Douglas v. Smith*, 2008 WL 434605, at *15 (conclusory allegation that defendants' actions, including initiation of a mail watch, were motivated by plaintiff's filing of grievances, failed to state an actionable claim).  Moreover, mere delays in the transfer of plaintiff's legal papers, even if motivated by retaliation, is not the type of "adverse action" required to support a retaliation claim.  *See, e.g., Rivera v. Pataki*, No. 04 Civ. 1286, 2005 WL 407710, at *19 (S.D.N.Y. Feb. 7, 2005) (several temporary incidents of actively preventing plaintiff from mailing his legal documents were not sufficiently

---

[13] The fact that the Dutchess County District Attorney attempted to introduce a letter intercepted by the mail watch in late 2004 at plaintiff's criminal trial does not support a claim of prejudice for the purpose of an access-to-courts claim in this action, which is focused on the legality of the mail watch in 2008 to 2009.  In any event, the state court criminal judge did not allow the letter to be used against Ford, so he was not prejudiced, in any event.  *See Douglas v. Smith*, 9:05-CV-1000 (LEK/DRH), 2008 WL 434605, at *13 (N.D.N.Y. Feb. 14, 2008)  (fact that letter seized by prison authorities and offered at plaintiff's criminal trial was suppressed by the state court judge negated any impact on him).

serious to constitute "adverse action").  With respect to the due process claim, the

Second Circuit has held that the DOCS policies regarding discretionary restrictions on

mail in prisons do not create a liberty interest protected by the due process clause.

*Silano v. Sag Harbor Union Free School Dist. Bd. of Educ.*, 42 F.3d 719, 724-25 (2d

Cir. 1994) (in *Purnell*, we rejected plaintiff's argument that a liberty interest relating to

inmate mail was created by DOCS Directive 4422) (citing *Purnell v. Lord*, 952 F.2d

679, 685 (2d Cir. 1992).

## V.     Due Process Claims Relating to Plaintiff's Disciplinary Hearing

### A.     Legal Standards

The due process protections afforded inmates facing disciplinary hearings that

affect a liberty interest include advance written notice of the charges, a fair and

impartial hearing officer, a hearing that affords the inmate the opportunity to call

witnesses and present documentary evidence, and a written statement of the evidence

upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380

F.3d at 69 (citing, *inter alia*, *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).  The

hearing officer's findings must be supported by "some" or "a modicum" of "reliable

evidence." *Id.* (citing, *inter alia*, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

Violations of state regulations with respect to disciplinary hearings do not, by

themselves, necessarily rise to the level of constitutional violations.  *See, e.g., Soto v.

Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (state law violation does not necessarily rise

to the level of a constitutional violation)*; Young v. County of Fulton*, 160 F.3d 899,

902 (2d Cir. 1998) (violation of state law is not the "benchmark" for determining

whether a constitutional violation has occurred).  To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural deficiencies, in the sense that the errors affected the outcome of the hearing.  *See, e.g., Clark v. Dannheim*, 590 F. Supp. 2d 426, 429-31 (W.D.N.Y. 2008) (citing, *inter alia*, *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991) ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial").

An inmate's right to assistance with his disciplinary hearing is limited.  *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).  An assistant has been held to be constitutionally necessary in cases in which a plaintiff is, *e.g.*, confined in SHU, and therefore, unable to marshal evidence and present a defense.  *Id*. (citation omitted).  In those cases, the assistant must do what the plaintiff would have done if he were able. *Id*.  *See also Jackson v. Johnson*, 30 F. Supp. 2d 613, 619 (S.D.N.Y. 1998) (a hearing assistant's role is not to act as legal advisor or advocate, but to serve as a surrogate, performing functions, such as contacting witnesses, which the charged inmate could not do because he is not among the general population) (collecting cases); *Clyde v. Bellnier*, 9:08-CV-909, 2010 WL 1489897, at *6 (N.D.N.Y. Apr. 13, 2010) (Singleton, J.) (no due process violation arose when the hearing officer/assistant failed to provide documents that did not exist, were confidential, or were not relevant to the defense).

Although due process includes a right to call witnesses, this right is also not

20

unfettered.  *Alicia v. Howell*, 387 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)).  This right may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance or lack of necessity.  *Id.*  (citing, *inter alia, Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)).  An inmate's due process rights are violated when a prison hearing officer refuses to interview witnesses without assigning a reason "logically related to preventing undue hazards to 'institutional safety or correctional goals.'"  *Ponte v. Real*, 471 U.S. at 497.  The burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of his position.  *Id.* at 499; *Kingsley v. Bureau of Prisons*, 937 F.2d at 30-31.

### B.    Application

Plaintiff appears to claim that he was deprived of due process in connection with the disciplinary charges leveled against him in March 2009 because they were based on letters confiscated pursuant to an illegal mail watch.  However, even if the mail watch was contrary to DOCS Directives or unconstitutional, plaintiff's letters would not be subject to suppression, and could be considered in the context of a prison disciplinary hearing.  *See, e.g., Dillhunt v. Theriault*, 9:07-CV-0412 (GTS/DEP), 2009 WL 4985477, at *15 (N.D.N.Y. Dec. 15, 2009) (the "fruit of the poisonous tree doctrine," which applies to evidence that is unconstitutionally obtained during a criminal investigation, has no applicability to prison disciplinary hearings) (citing *Rabb v. McMaher*, No. 94-CV-614, 1998 WL 214425, at *7 (N.D.N.Y. Apr. 24, 1998) (Pooler, J.)).  *See also United States v. Green*, No. 92-CR-159C, 1994 WL

178139, at *5-6 (W.D.N.Y. Feb.10, 1994) (Curtin, J.) (in the context of a criminal case, evidence from a mail watch may be introduced even though it was implemented in violation of DOCS Directive 4422).

In the second amended complaint and the declaration in opposition to defendants' motion, the plaintiff specifies how he believes his due process rights were violated in connection with his disciplinary hearing.  First, plaintiff claims that he was denied adequate assistance in preparing for the hearing because he was not provided with two types of documents–the records authorizing and stating the justification for the ongoing monitoring of his mail and his prior grievances, in response to which DOCS officials allegedly denied that the mail watch was in place.   (AC ¶¶ 29, 56; Pltf.'s Decl., Dkt. No. 35 at 24, 53-57).[14]  Plaintiff objects, in passing, that the hearing officer relied on information that "was never read into the record," (AC ¶ 56), presumably referring to *ex parte* testimony that the hearing officer received out of the presence of the plaintiff, because of security concerns.  Plaintiff also alleges that he was improperly denied the right to call two witnesses at the hearing: (1) Supt. Smith, to testify about the circumstances relating to the approval of the ongoing mail watch, and (2) Lt. Barone, who plaintiff wanted to explain a perceived inconsistency in testimony about who the "reviewing officer" was for the inmate misbehavior report filed against plaintiff by Lt. Gardner.  (Pltf.'s Decl., Dkt.  No. 35 at 25-26, 59-62).

According to the hearing transcript submitted by plaintiff, he was denied

---

[14] Because of the inconsistent page numbering of plaintiff's declaration, references will be to the page numbers in the CM-ECF header.

requested documents regarding the authorization of his prior mail watch because the underlying facts were deemed confidential.  (Dkt. No. 35-4 at 27-29, 57).  Plaintiff was given some of his prior grievances, but requested all of his other grievances for the prior five years which, he stated during the hearing, would show that officials at Shawangunk previously denied he was being subjected to a mail watch.  (Dkt. No. 35-4 at 30, 33-35).  Defendant Gutwein denied plaintiff the additional grievances, finding they would be "redundant."  (Dkt. No. 35-4 at 57).  Based on the authority cited above, the Hearing Officer's stated reasons for refusing plaintiff the additional documents appear, on their face, to be rationally related to penological goals of maintaining institutional security and avoiding repetitive and irrelevant evidence at the hearing.  In any event, even if these documents were not properly denied, the procedural error would have had no impact on the outcome of plaintiff's disciplinary hearing and thus, would be harmless.  Plaintiff was clearly attempting to use these documents to establish that the correspondence used against him at the hearing were seized pursuant to an illegal mail watch.  However, as noted above, because there is no suppression remedy for illegally seized evidence in the context of a disciplinary hearing, plaintiff would not have altered the outcome of the hearing even if he were able to introduce additional evidence regarding the propriety of the mail watch.

At the conclusion of the hearing, defendant Gutwein notified plaintiff that he was relying, in part, on confidential testimony that he received from two witnesses when plaintiff was not present.  (Dkt. No. 35-4 at 55-56).  Taking testimony from witnesses out of plaintiff's presence does not violate due process requirements.

23

*Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 322-23 & n.5 (1976) (inmates are not entitled to the right to confront and cross-examine witnesses at a disciplinary hearing, and the hearing officer may rely upon evidence not presented at the hearing).      The witnesses called at plaintiff's disciplinary hearing included Lt. Gardner, who issued the misbehavior report against plaintiff; the two inmates who were implicated in the correspondence by which plaintiff allegedly tried to induce one to assault the other; Sgt. Kimler, who testified about the assistance she provided plaintiff in connection with the hearing; and Dep. Supt. Maly who testified, *inter alia*, about the mail watch which resulted in the discovery to the correspondence which was the basis of the charges against the plaintiff.  (Dkt. No. 35-4 at 58).  Plaintiff Ford also wanted to call Supt. Smith regarding the reasons for the authorization of the mail watch.  Defendant Gutwein denied this request, finding that Supt. Smith's testimony would be redundant given that Dep. Supt. Maly had already testified about the mail watch.  (Dkt. No. 35-4 at 56). The Hearing Officer's stated reason for not calling Supt. Smith was rationally related to the penological goal of avoiding duplicative evidence at the hearing.  In any event, plaintiff's attempt to call Supt. Smith was clearly part of his effort to prove the illegality of the mail watch.  Again, because the seized correspondence would not have been subject to suppression even if plaintiff had proven that the mail watch was illegal, any procedural error relating to not calling Supt. Smith would not have effected the outcome of the hearing, and would be harmless.

Plaintiff also asked to call a "Lt. Barone" to clarify an alleged inconsistency

between Lt. Gardner and Sgt. Kimler about who was the "reviewing" officer on Lt. Gardner's misbehavior report against plaintiff.  Defendant Gutwein denied the request for this further testimony as being irrelevant and redundant.  (Dkt. No. 35-4 at 57).  Despite the plaintiff's extensive efforts to articulate why this testimony was relevant to his hearing (Pltf.'s Decl., Dkt.  No. 35 at 24-26, 59-63), this court does not find that further evidence regarding this minor procedural issue would have been relevant or would have any impact on the outcome of the hearing.  Based on the submissions of plaintiff, this court concludes that the second amended complaint fails to state a plausible due process claim relating to the disciplinary hearing.

## VI.    Denial of Plaintiff's Request to Marry

The Supreme Court has recognized that prisoners have a fundamental constitutional right to marry.  *Turner v. Safely*, 482 U.S. at 95, 96 (citing *Zablocki v. Redhail*, 434 U.S. 374 (1978) and *Loving v. Virginia*, 388 U.S. 1, 12 (1967)).  However, the right to marry, like many other rights is subject to substantial restrictions as a result of incarceration.  *Turner*, 482 U.S. at 95.  In determining whether a prison regulation that infringes on a fundamental right is reasonable, a court must decide:  (1) whether there is a "valid rational connection" between the regulation and a legitimate and neutral governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on an inmates' liberty, and on the allocation of limited prison resources; and (4) whether the regulation is reasonable, or whether it represents an "exaggerated

response" to prison concerns.  *Turner*, 482 U.S. at 89-90.[15]

Plaintiff alleges that defendant Smith denied his request to marry based on his long-term SHU status, pursuant to DOCS Directive 4201, which grants the Superintendent of a DOCS facility the discretion to deny a marriage request for an inmate confined in disciplinary housing.  (AC ¶¶ 16-17, 20).[16]  At the time he made his request, plaintiff faced approximately four more years in SHU confinement.

In *Turner*, the Supreme Court invalidated a Missouri regulation which prohibited inmates from marrying other inmates or civilians unless the prison

---

[15] The *Turner* court did not decide whether an inmate's right to marry should be reviewed under a more stringent standard than the "reasonable relationship" test because it also implicates the rights of marriage partners who are not prisoners.  *Turner v. Safely*, 482 U.S. 97.  However, two years thereafter, the Supreme Court has made clear that to apply a heightened level of scrutiny to cases involving prison regulations affecting the rights of both prisoners and outsiders would unreasonably constrain the corrections system.  *See Thornburgh v. Abbott*, 490 U.S. 401, 410 n. 9 (1989) (any attempt to forge separate standards for cases implicating the First Amendment rights of outsiders and inmates is out of step with Supreme Court case law).

[16] Plaintiff also makes conclusory allegations that Supt. Smith denied plaintiff's request to marry in retaliation for his filing of grievances and lawsuits.  (AC ¶ 46).  The only factual support for the claim of retaliation is an allegation that Supt. Smith told plaintiff that he would not allow him to marry because of his involvement in the assault of a correction officer at Green Haven.  (AC ¶ 18).  Participation in an assault is not a protected activity that can form the basis for a retaliation claim.  Based on the authority set forth below, plaintiff's unsupported allegations fail to state a plausible claim of retaliation relating to the denial of his marriage request.  Plaintiff also asserts that the refusal of his marriage request violated his Eighth Amendment rights, but the court finds no authority to suggest that the inability to marry is the type of cruel and unusual deprivation required to support such a claim.  *See Johnson v. Rockefeller*, 365 F. Supp. 377, 381 (S.D.N.Y. 1973) (the prohibition against participating in the marriage ceremony does not subject a life-term prisoner to a "fate forbidden by the principle of civilized treatment guaranteed by the Eighth Amendment," nor is it "barbarous" or "shocking to the conscience"), *aff'd without opinion sub nom. Butler v. Wilson*, 415 U.S. 953 (1974).  *Johnson v. Rockefeller* was distinguished, but not repudiated in *Turner v. Safely*, 482 U.S. at 97, leading this court to conclude that the denial of plaintiff's marriage request should be evaluated under the *Turner* standards, not the Eighth Amendment.

26

superintendent determined that were compelling reasons for the marriage, finding that this "almost complete ban on the decision to marry" was not reasonably related to any legitimate penological objective. *Turner v. Safely*, 482 U.S. at 94-99).  There is some case law which suggests that temporary delays in allowing an inmate to marry for disciplinary reasons would pass muster under the *Turner* standards, but that indefinite or prolonged refusals might not.  *See, e.g.*, *Castellanos v. Gomez*, C-93-0503, 1994 WL 519465, at *6 (N.D. Cal. Sept. 21, 1994) (although defendants' initial statement to plaintiff that there were no procedures in place for SHU inmate marriages approaches the blanket denial of marriage held unconstitutional in *Turner*, defendants moved expeditiously to put procedures in place to allow the marriage; plaintiff's Section 1983 claims based on the defendants' 12-month delay in allowing his marriage dismissed under Rule 56); *Martin v. Snyder,* 329 F.3d 919, 921-22 (7th Cir. 2003) (because warden postponed, but did not preclude inmate's marriage based on a disciplinary charge and temporary denial of visitation of plaintiff's girlfriend, constitutional claim based on 12-month delay in marriage was properly dismissed).

Because prison officials have some burden to demonstrate a penological justification for restricting an inmate's right to marry, and to satisfy the other elements of the *Turner* test, such claims are not conducive to resolution in the context of a Rule 12(b)(6) motion to dismiss.[17]  *See, e.g.*, *Martin v. Snyder*, 329 F.3d 921, 922 (a

---

[17] *See Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006) (under *Turner*, the defendants bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational).

legitimate penological justification for refusing to allow an inmate's marriage is a defense that cannot be adjudicated under Rule 12(b)(6)); *Engel v. Ricci*, 07-5354, 2008 WL 2167994, at *5-6 (D.N.J. May 22, 2008) (denying a Rule 12(b)(6) motion to dismiss a claim based on a 19-month delay in approval of an inmate's marriage).  As discussed above, defendant Smith has presented and defended his reasons for denying plaintiff's request to marry in an affidavit and supporting documents that are not fairly considered against the plaintiff in the context of this motion to dismiss.  Based on the facts properly before this court in addressing the pending motion, it is unclear whether Supt. Smith refused plaintiff's right to marry for the four years or more he remained in the SHU, or whether he would reconsider approval while plaintiff was still confined in a disciplinary setting.  This court concludes that the second amended complaint states a facially valid First Amendment claim against defendant Smith relating to his denial of the marriage request.  Supt. Smith is, of course, not precluded from establishing, in the context of a properly noticed summary judgment motion, that his decision passes muster under the *Turner* standards.

## VII.  Visitation

### A.    Imputed First Amendment Claim

In *Overton v. Bazzetta*, the Supreme Court considered the nature and scope of visitation rights of prisoners:

> Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration. . . . And, as our cases have established, freedom of association is among the rights least compatible with incarceration. . . .  Some curtailment of that freedom must be expected in the prison context.

28

We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners.

*Overton v. Bazzetta*, 529 U.S. 126, 131 (2003).  The Court concluded that it did not need to explore and define, at length, the associational rights of inmates under the First Amendment, because the restrictions in question, including an indefinite ban[18] on the visitation rights of prisoners with two substance abuse violations, bore "a rational relation to legitimate penological interests" under the standards of *Turner v. Safely*.  *Id.* at 132, 134-36.

"[I]nmates who claim that restrictions on their visitation privileges violated their First Amendment right to association . . . must allege facts sufficient to support a finding that the challenged restrictions bear no 'rational relation to legitimate penological interests.'"  *Calderon v. Conn. Dep't of Corrs*., Civ. 04-1562, 2006 WL 3085716, at *9 (D. Conn. Sept. 1, 2006) (quoting *Overton v. Bazzetta*, 539 U.S. at 131-32).  Plaintiff does not explicitly raise a First Amendment challenge to the visitation restrictions imposed on him, although this court will liberally construe his complaint to raise such a claim.  Plaintiff acknowledges that the visiting privileges of his fiancee were indefinitely suspended in April 2009 because of her alleged involvement in smuggling a note from another inmate to plaintiff in the visiting room, and because of concerns for her safety based on the intercepted letter in which plaintiff allegedly asked another individual to harass and threaten her.  (AC ¶¶ 24,

---

[18] The visitation ban had a term of at least two years; reinstatement at the end of that period was not automatic, but could be granted the discretion of the warden.  *Id.* at 130, 134.

30-32, 34).  These are clearly legitimate penological interests that justified Supt.
Smith's suspension of plaintiff's fiancee's visiting privileges under the *Turner*
standards.  *See, e.g.*, *Calderon v. Conn. Dep't of Corrs.*, 2006 WL 3085716, at *9, 11
(denial of visitation for disciplinary reasons would likely constitute a legitimate
penological interest under Rule 12(b)(6) standards; only the claim that visitation was
denied because of plaintiff's ethnicity was not dismissed)*; Phillips v. Girdich*,
9:03-CV-1019 (DNH/DHR), 2007 WL 3046744, at *2-4 (N.D.N.Y. Oct. 17, 2007)
(indefinite suspension of visitation privileges, lasting about three years, imposed due
to improper conduct during a visit and an ensuing positive drug test, advanced
legitimate penological goals and otherwise satisfied the *Turner* criteria); *Hernandez v.
McGinnis*, 272 F. Supp. 2d 223, 227-28 (W.D.N.Y. 2003) (revocation of inmate's
visitation rights, which lasted roughly three years, served a legitimate
purpose–deterring visit-related misconduct and promoting internal security).

## B.    Due Process Claim

To prevail on a procedural due process claim under section 1983, a plaintiff
must show that he possessed a protected property or liberty interest and that he was
deprived of that interest without being afforded sufficient procedural safeguards.  *See
Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000) (liberty interest); *Hynes v.
Squillace,* 143 F.3d 653, 658 (2d Cir. 1998).  In *Sandin v. Conner*, 515 U.S. 472, 484
(1995), the Supreme Court held that although states may create liberty interests for
inmates that are protected by due process, "these interests will be generally limited to
freedom from restraint which, while not exceeding the sentence in such an unexpected

manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Following the Supreme Court's decision in *Sandin v. Connor*, "in a majority (if not the entirety) of the circuits–including the Second Circuit–prisoners have no protected liberty interest in contact visits."  *Zimmerman v. Burge*, 06-CV-0176 (GLS-GHL), 2008 WL 850677, at *2-3, 12 & n.53 (N.D.N.Y. Mar. 28, 2008) (collecting cases) (restrictions on the conditions in which inmates may visit with non-inmates would appear to be a hardship that is rather typical and necessary in relation to the ordinary incidents of prison life, and thus does not implicate a protected liberty interest).[19]

Although plaintiff alleges that his complaints to the DOCS Commissioner about the denial of his fiancee's visitation rights were not answered (AC ¶¶ 35, 51 (p. 30)), he attaches to his opposition papers several grievances regarding the visitation issue that were considered and denied by DOCS.  (Dkt. 35-6 at 3-6).  Even if restrictions on visitation implicated some limited liberty interest, the grievance process would provide adequate due process under the circumstances.  *Id.* at *13.

## C.    Eighth Amendment Claim

To the extent plaintiff is alleging that the restriction on his visitation rights

---

[19] To the extent plaintiff predicates his due process claim regarding visitation on alleged violations of DOCS directives or state regulations (AC ¶ 31), that alone does not support a viable constitutional claim under Section 1983.  *Id.* at *11 & n. 48; *Holcomb v. Lykens*, 337 F.3d 217, 224-25 (2d Cir. 2003) (state corrections officials did not violate inmate's due process rights when they revoked inmate's extended furlough without following procedures outlined in department of corrections manual).

violated the Eighth Amendment, he fails to state a claim upon which relief may be granted. Under Supreme Court and Second Circuit authority, the challenged denial of visitation "does not amount to the infliction of pain at all, and that, even it did, it does not amount to the sort of wanton (and penologically unjustified) infliction of pain prohibited by the Eighth Amendment." *Id.* at *3, 14 & n.63 (citing, *inter alia*, *Overton v. Bazzetta*, 539 U.S. at 136-137 (prison regulation that subjected inmates with two substance-abuse violations to ban of at least two years on all visitation privileges did not create inhumane prison conditions, or deprive the inmate of basic necessities, under Eighth Amendment).

### D.    Retaliation Claim

The second amended complaint makes completely unsupported claims that certain defendants restricted his visitation rights in retaliation for his filing of grievances and lawsuits.  (AC ¶¶ 30, 46).  Based on the authority cited below, such conclusory allegations are insufficient to state a plausible claim of retaliation.

## VIII.  Personal Involvement of Defendant Fischer

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong.  *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id.*  *See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, 129 S. Ct. 1937 (U.S. 2009).

DOCS Commissioner Fischer is mentioned as a defendant in a number of the causes of action in the second amended complaint.  However, plaintiff's allegation that defendant Fischer failed to respond to written appeals/complaints regarding the denial of his fiancee's visitation rights (AC ¶¶ 35, 51), is the sole basis for the claim that Commissioner Fischer was involved in any of the purported constitutional violations.  As noted above, defendant also filed grievances with regard to the restrictions on his visitation, which were addressed by DOCS.  Defendant Fischer's receipt of, and/or failure to respond to, plaintiff's letters of complaint is not a sufficient basis to render him liable under Section 1983, and he should be dismissed from this action.  *See, e.g., Sealely v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCS commissioner was not personally involved in alleged constitutional violation where he only referred plaintiff's complaint to a subordinate for decision); *Greenwaldt v.*

33

*Coughlin*, No. 93 Civ. 6551(LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (collecting cases).

## IX.   Retaliation–Cell Searches

### A.   Legal Standards

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (citations omitted).  This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights.  *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted).  Accordingly, plaintiff must set forth non-conclusory allegations.  *Id.*  Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they

34

would have taken the adverse action even in the absence of the protected conduct.  *Id*. (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977))

### B.    Application

As noted above, plaintiff makes conclusory allegations that, in carrying out most of the conduct described in the second amended complaint, the defendants were retaliating against him for filing grievances and lawsuits against DOCS officials.  The only instance in which plaintiff provides any supporting facts relates to the three cell searches conducted at Shawangunk in July 2009.  Plaintiff claims that, just after the first search, he had received correspondence from the court relating to this lawsuit, and he was doing legal research in this case and in connection with a post-conviction proceeding in his criminal case.  (AC ¶¶ 37-38).  During the second search, on July 16th, two correction officers purportedly told plaintiff that they were directed by "higher ups," including defendants Smith and Maly, to destroy his cell because plaintiff "pissed them off."  He was also allegedly told that the officers were directed to take his legal magazines and books.  (*Id.*).  However, even if these allegations, accepted as true, were sufficient to support a plausible claim of a connection between his protected activities involving litigation and the searches of his cell, plaintiff cannot state a viable cause of action for retaliation.  Numerous cases in this circuit have held a prison cell search is not the type of "adverse action" that can support a viable claim of retaliation.  *See, e.g, Lebron v. Selsky*, 9:05-CV-172 (GTS/DRH), 2010 WL 1235593, at *5 & n.8 (N.D.N.Y. Mar. 21, 2010) (collecting cases) (cell searches, even if conducted because of retaliatory motives, are not actionable under Section 1983).

35

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 32) be denied with respect to the First Amendment claim against defendants Maly and Smith relating to the continuation of the mail watch against plaintiff in 2008 and 2009, and the First Amendment claim against defendant Smith relating to his refusal to permit plaintiff to marry; and it is further

**RECOMMENDED**, that defendants' motion be granted and plaintiff's second amended complaint be dismissed with respect to all other defendants and claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.


Dated:  January 31, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge

36